# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AARON HOTEL GROUP, LLC, a Connecticut limited liability company, individually, and on behalf of a class of similarly situated individuals and entities, | : : : : : | Case No. 3:21-cv-000727-AVC |
| Plaintiff, | : : | |
| v. | : : | |
| HOLIDAY HOSPITALITY FRANCHISING, LLC, SIX CONTINENTS HOTELS, INC. d/b/a INTERCONTINENTAL HOTELS GROUP and IHG OWNERS ASSOCIATION, INC., | : : : : : | |
| Defendants. | : : : : | |
| | : | AUGUST 27, 2021 |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER

## **INTRODUCTION**

This case is one of (currently) six virtually identical lawsuits filed by the same plaintiffs' counsel in different federal courts around the country against Defendant Six Continents Hotels, Inc. ("SCH") and its wholly owned subsidiary Holiday Hospitality Franchising, LLC ("HHF," together with SCH, "IHG"). Plaintiffs in these cases are IHG licensees that are challenging the terms of the License Agreements they signed. All the cases make nearly identical factual allegations, challenge precisely the same conduct and contract provisions, and assert essentially the same causes of action against IHG. Plaintiffs and their counsel in these cases are asking six (so far) different federal courts each to manage, consider, and decide the same cases involving the very same issues.

This wasteful and inefficient litigation strategy cannot stand. The License Agreement here, like those in the other cases, contains a mandatory forum selection clause requiring that any litigation filed by Licensee against IHG must be brought in Georgia, the location of IHG's U.S. headquarters. Therefore, under the Supreme Court's *Atlantic Marine* decision, the Court should transfer this action to the Northern District of Georgia as the contractually designated forum. Alternatively, the interest of justice plainly compels transfer to the Northern District of Georgia under 28 U.S.C. §1404(a), to avoid "the wastefulness of time, energy and money that §1404(a) was designed to prevent," *Continental Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960), as well as the risk of inconsistent results from this serial litigation.

Because this action should be transferred to Georgia, this Court should reserve ruling on IHG's contemporaneously filed Motion to Dismiss, which should be addressed to the Georgia transferee court. See *Jones v. InfoCure Corp.*, 310 F.3d 529, 533 (7th Cir. 2002) ("Generally speaking, a district court relinquishes all jurisdiction over a case when it is transferred to another

1

district court."); *One on One Basketball, Inc. v. Global Payments Direct, Inc.*, 38 F. Supp. 3d 44, 51 (D.D.C. 2014) ("In light of the decision to transfer this case, the Court does not address the portion of Defendant's motion seeking dismissal of Plaintiff's negligence claim.").

## BACKGROUND

Defendants SCH and HHF are the primary U.S. operating companies of a group of affiliated companies known as IHG® Hotels & Resorts. IHG owns, operates, and licenses the operation of multiple hotel brands as part of a national and international franchise hotel system, the majority of which is operated under a franchise model. (Compl. ¶¶ 1-2.) Among its many brands, SCH owns the Holiday Inn® family of brands (which includes the Holiday Inn®, Holiday Inn Express®, Holiday Inn Express® & Suites, Holiday Inn® & Suites, and Holiday Inn® Resort brands), and the Staybridge Suites® brand, among others. (Declaration of Jenny Tidwell, ¶ 5.) HHF offers license agreements to third-party hotel owners that choose among other business and franchise options to utilize IHG's brands and franchise systems in connection with the operation of their hotel properties. (*Id.*)

Plaintiff Aaron Hotel Group, LLC ("Licensee") is a Connecticut limited liability company that owns and operates a hotel property in Windsor Locks, Connecticut. (*Id*. at ¶ 41 and Ex. A, Agreement). Licensee entered into a License Agreement with HHF with a commencement date of December 15, 2017, to operate Licensee's hotel as a Holiday Inn Express® & Suites branded hotel for a term of fifteen years and six months (the "License Agreement," a copy of which has been filed as a supplemental attachment to the Complaint, *see* Dkt. 12.). (Compl. at ¶ 53 and Agreement, § 12(A)). In exchange, Licensee agreed (among other things) to pay royalties and other fees, and to operate the hotel as required by the terms of the Agreement. (Agreement, § 2(B).)

2

In exchange, Licensee agreed (among other things) to pay royalties and other fees, and to operate the hotel as required by the terms of the Agreement. (Agreement, § 2(B).)

Relevant to this Motion, Licensee agreed in the License Agreement that it would bring all litigation against IHG in either the United States District Court for the Northern District of Georgia or the state courts for DeKalb County, Georgia. Specifically, Licensee agreed that:

> *Licensee hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the U.S. District Court for the Northern District of Georgia, Atlanta Division and the State and Superior Courts of Dekalb County, Georgia for the purpose of any and all disputes*. However, Licensor remains entitled to seek injunctive relief in the federal or state courts either of Georgia or of the state of the Hotel's location or of Licensor's principal place of business. *Should Licensee initiate litigation against Licensor, its parents, subsidiaries or one of its affiliated entities, Licensee must bring action in the courts identified above[.]*

(Agreement, § 14(B)(1) (emphasis added).)

Despite this mandatory forum selection clause, Licensee filed this putative class action in the District of Connecticut asserting six causes of action under federal and state law, all of which arise under the License Agreement. Licensee challenges a host of business decisions and programs implemented by IHG in its operation of the Holiday System. It complains that IHG requires property renovations and updates too frequently, that property renovations are too costly, and that IHG imposes property inspection expenses on licensees. (Compl. ¶¶ 82-86, 95, 97.) It further objects to IHG's requirement that licensees use uniform System-approved products in their Holiday-branded hotels, including system-approved telecommunications and wireless internet providers. (*Id.* ¶¶ 71-76.) Licensee also takes issue with the design and operation of IHG's booking systems, marketing programs, guest loyalty programs, and allocation of advertising dollars. (*See, e.g.*, *id*. ¶¶ 21-26, 103-113, 119-129.)

Licensee's Connecticut filing is part of a broader strategy by several disgruntled IHG licensees to repudiate and rewrite their agreements by challenging the same IHG business decisions and programs in multiple federal courts around the country, despite the fact that all these Plaintiff Licensees knowingly and voluntarily signed agreements containing the same mandatory forum clauses requiring them to bring any suits against IHG in Georgia. All the Plaintiff Licensees are represented by common national counsel who are coordinating these filings across the country. The Complaints in each action assert nearly identical allegations and causes of action. To date, Licensees' common counsel have filed virtually identical complaints in the Eastern District of Louisiana, the Southern District of Texas, the Southern District of Ohio, the Eastern District of Pennsylvania, and the District of New Jersey, in addition to this action.[1]

## ARGUMENT

This Court should transfer this action to the United States District Court for the Northern District of Georgia because the License Agreement contains a mandatory forum selection clause requiring Licensee to bring any litigation against IHG in the Northern District of Georgia or the state courts of DeKalb County, Georgia. *See Atl. Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49 (2013) (requiring transfer of action filed in violation of mandatory forum selection clause in the applicable agreement). Alternatively, the factors under 28 U.S.C. § 1404(a) compel transfer to Georgia in the interest of justice to avoid wasteful duplication of effort and resources and the risk of inconsistent rulings, which otherwise would result from having multiple federal courts preside over and decide the same issues.

---

[1] *See Park 80 Hotels LLC, PL Hotel, LLC, et al. v. Holiday Hospitality Franchising, LLC, et al.*, 2:21-cv-974 (E.D. La. May 19, 2021); *PH Lodging Tomball, LLC v. Holiday Hospitality Franchising, LLC, et al.*, 4:21-cv-01803 (S.D. Tex. June 3, 2021); *Synergy Hotels, LLC v. Holiday Hospitality Franchising, LLC, et al.*, 2:21-cv-03248 (S.D. Oh. June 7, 2021); *Bensalem Lodging Associates, LLC v. Holiday Hospitality Franchising, LLC, et al.*, 2:21-cv-02882 (E.D. Pa. June 29, 2021); *A Hunts Mills Associates LLC v. Holiday Hospitality Franchising, LLC, et al.*, 2:21-cv-13726 (D. N.J., July 16, 2021).

I.   **This Court should transfer this action pursuant to *Atlantic Marine* because the License Agreement contains a valid and enforceable mandatory forum selection clause requiring Licensee to bring all disputes against IHG in Georgia.**

Mandatory forum selection clauses like the one here are highly favored and "should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63; *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). When a mandatory forum selection clause applies to a plaintiff's claims, the Court must "transfer the case to the forum specified in that clause" absent "extraordinary circumstances" that do not exist here. *Atl. Marine*, 571 U.S. at 62. In the case of a mandatory forum selection clause, the Court does not apply a traditional 1404(a) analysis. *Columbia Aircraft Sales, Inc. v. Piper Aircraft, Inc.*, No. 3:20-cv-00701 (JAM), 2020 U.S. Dist. LEXIS 184978, *5, 2020 WL 5904939, *2 (D. Conn. Oct. 6, 2020). This Court stated in *Columbia Aircraft* that. "[f]or cases involving a section 1404 motion to transfer due to a valid forum-selection clause, the Supreme Court [in *Atlantic Marine*] has instructed that courts should alter the usual analysis for a section 1404 motion." *Id.* First, the Court should give no deference to Licensee's choice of forum. *Id.* Instead, Licensee bears the burden to show that the mandatory forum selection clause ***should not*** be enforced. *Id.* The Court also does not consider the 1404(a) private interest factors, which Licensee is deemed to have waived. *Id.* Licensee must show some contravening public interest to justify refusal to enforce the forum selection clause. *Id.* Accordingly, the Court should deny a motion to transfer based on a mandatory forum selection clause "[o]nly under ***extraordinary*** circumstances ...." *Atl. Marine*, 571 U.S. at 62 (emphasis added). Licensee cannot identify any interest to satisfy that high standard here and, therefore, this Court should transfer this action to the Northern District of Georgia as agreed in the parties' forum selection clause.

5

**A. The License Agreement contains a mandatory forum selection clause requiring any litigation filed by Licensee to be brought in Georgia.**

Licensee agreed in the License Agreement: (1) to submit to the jurisdiction of the federal District Court for the Northern District of Georgia and the state courts of DeKalb County, Georgia; and (2) to bring any claims against IHG in one of those two fora. The License Agreement provides:

> *Licensee hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the U.S. District Court for the Northern District of Georgia, Atlanta Division and the State and Superior Courts of Dekalb County, Georgia for the purpose of any and all disputes.* However, Licensor remains entitled to seek injunctive relief in the federal or state courts either of Georgia or of the state of the Hotel's location or of Licensor's principal place of business. *Should Licensee initiate litigation against Licensor, its parents, subsidiaries or one of its affiliated entities, Licensee must bring action in the courts identified above[.]*

(Agreement, § 14(B) (emphasis added).) This provision constitutes a mandatory forum selection clause as to Licensee because it requires that Licensee "must" bring litigation against IHG in the "courts identified above." *See LVAR, L.P. v. Bermuda Commer. Bank Ltd*., 649 F. App'x. 25 (2d Cir. 2016) (holding that *Atlantic Marine* generally requires enforcement of forum selection clauses containing mandatory language). The "courts identified above" can only mean the Northern District of Georgia and the courts of DeKalb County, Georgia, which are the only specific courts in fact identified "above." The forum selection clause applies broadly to "any and all disputes" arising out of the License Agreement and plainly encompasses the claims Licensee attempts to assert in this action.

To the extent Licensee attempts to justify its Connecticut filing by reference to the second sentence in Section 14(B), which addressed only ***Licensor's right*** to bring certain types of actions against Licensee outside Georgia, that argument plainly fails. Under Georgia law, which governs

the interpretation of the License Agreement, including the forum selection clause,[2] the Court must honor the plain language of the parties' agreement. *Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 241 Ga. App. 762, 763 (2000) ("If the terms used are clear and unambiguous[,] they are to be taken and understood in their plain, ordinary, and popular sense."). Additionally, the Court must consider not only the meaning of the words in the provision, but "their arrangement within the context of the [contract] provisions generally." *Midland Nat'l Ins. Co. v. Wright*, 117 Ga. App. 208, 209 (1968). Standard "rules of grammatical construction" generally govern contract interpretation. O.C.G.A. § 13-2-2(6).

Here, the forum selection clause in the License Agreement ***can only*** mean that Licensee must bring any litigation against IHG in Georgia. Licensee's obligations with regards to venue are contained in the first and third sentences of the provision. Each of those sentences has ***Licensee*** as its grammatical subject. In the first sentence, Licensee agreed to subject itself to jurisdiction in the Northern District of Georgia and the state courts of DeKalb County. By also referring to "Licensee," the third sentence connects back to the first and restricts Licensee to the two courts "identified above" for bringing suit against IHG. These two sentences together create a complete statement of ***Licensee's*** venue obligations under the License Agreement.

To suggest that the second sentence has any bearing on where Licensee can file suit against IHG ignores the plain language of that sentence, which addresses only actions brought by Licensor, and takes the second sentence completely out of the context and syntax of the paragraph as a whole. The second sentence does not address Licensee's venue obligations at all. The grammatical subject

---

[2] *See* Agreement, § 14(B)(1). As discussed below, the choice of law provision in the License Agreement is enforceable and requires application of Georgia substantive and contract interpretation principles. *See also Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360 (KAD), 2021 U.S. Dist. LEXIS 34284 (D. Conn. Feb. 24, 2021) (granting judgment on pleadings on Connecticut Unfair Trade Practices ("CUTPA") claim because of Maryland contractual choice of law provision); *Alpha Beta Capital Partners, L.P. v. Pursuit Inv. Mgmt. LLC*, 193 Conn. App. 381, 426, 219 A.3d 801, 828 (2019) (holding that New York choice of law provision precluded plaintiff from bringing CUTPA claim).

of the second sentence is *Licensor* (HHF). The provision is unambiguous and only authorizes *Licensor* to bring certain claims (for injunctive relief) against Licensee in Licensee's home state.

Sentence structure and the relationship between sentences are important to determine the plain meaning of this provision. Critically, this second sentence begins with the conjunctive adverb "however," meaning that it modifies the preceding sentence by drawing a contrast to it. *See, e.g.*, *Morrow v. Caldwell*, 153 So. 3d 764, 770 (Ala. 2014) (interpreting statutory provision containing two sentences connected with conjunctive adverb "however"); *Quintini v. Panama City Housing Auth.*, 102 So. 3d 688, 689 (Fla. 1st DCA 2012) (similar). The first sentence requires Licensee to submit to jurisdiction in two Georgia venues. The second sentence modifies the first by noting the ***exception only for Licensor*** to choose to sue Licensee for injunctive relief in Licensee's home state. The conjunctive adverb "however" subordinates the second sentence to the first. *See Pizzillo v. Pizzillo*, 884 S.W.2d 749, 753 (Tenn. Ct. App. 1994).

Licensee thus cannot rely on the subordinate second sentence addressing ***Licensor's*** rights to expand ***Licensee's*** contractually available fora for bringing litigation against IHG. To the extent Licensee argues that the third sentence's reference to "courts identified above" somehow incorporates the courts available to Licensor in the second subordinate sentence, that reading flouts the plain meaning and the organizational hierarchy of the three clauses in the provision. Licensee may not "lift[] a clause out of a context in which the synopsis plainly places it and mak[e] it refer to another subject matter in violation of the rules of grammatical construction." *Midland Nat'l Ins. Co. v. Wright*, 117 Ga. App. 208, 209 (1968); *see also Coker v. Coker*, 265 Ga. App. 720, 722 (2004) (holding that a subordinate or ancillary clause cannot change the meaning of the dominant or more essential elements of the provision in light of the provision's overall sentence structure).

**B.  The Court should transfer this action to Georgia under *Atlantic Marine*'s streamlined analysis based on the mandatory forum selection clause.**

There can be no question that the License Agreement's mandatory forum selection clause requiring Licensee to bring suit in Georgia is valid and enforceable. Licensee cannot show any that recognized exception to enforceability of a contractual forum selection clause applies here. Specifically, a forum selection clause is enforceable unless: (1) its formation was induced by fraud or overreaching; (2) it was not reasonably communicated to the parties; (3) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (4) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (5) enforcement of the forum selection clause would contravene a strong public policy. *See e.g., Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991): *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006). Licensee has not asserted fraud in the making of the License Agreement and cannot show that litigation in Georgia would deprive it of its day in court or of an effective remedy (it would not). Licensee can show no public policy to contravene the strong policy favoring enforcement of contractual forum selection clauses.

Because Licensee agreed to an enforceable mandatory forum selection clause, this Court should transfer this action to the contractually selected forum under *Atlantic Marine* unless Licensee can show some extraordinary grounds, based on the 1404(a) public factors only, to refuse to do so here. *Atl. Marine*, 571 U.S. at 64. The "three major public interest factors" that a district court must consider are: "(1) judicial administration, including the burden of jury duty and the problem of court congestion; (2) the local interest in the controversy; and (3) the advantage of having a court familiar with the law being applied." *Apolinario v. Avco Corp.*, 1982 U.S. Dist. LEXIS 10174, *21 (2d Cir. Oct. 5, 1982) (listing public interest factors in the analogous context of forum non conveniens analysis).

Licensee cannot meet its burden to show, based on these public factors that this is an extraordinary case as contemplated by *Atlantic Marine*. To the contrary, as discussed further in Section II(B) below, application of the 1404(a) public factors here strongly compels transfer, including that Georgia law will govern Licensee's non-federal claims and adjudication of all nearly identical actions in the common Georgia venue will relieve undue burden on the judicial system in requiring six federal courts to decide essentially the same claims. Licensee cannot show that any public factor—which are the only relevant factors to consider under *Atlantic Marine*—justifies refusing to transfer pursuant to the mandatory forum selection clause. Accordingly, the *Atlantic Marine* analysis requires the Court to transfer this action to the Northern District of Georgia.

## II. Alternatively, the Court should transfer this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) in the interests of justice and efficiency.

Even if the Court construes the forum selection clause in the License Agreement to authorize Licensee to have filed this suit in Connecticut, the Court nonetheless should transfer this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). The interests of justice and efficiency for both the federal court system and the parties compel transfer of this and the other virtually identical actions filed by the same Plaintiffs' counsel in multiple jurisdictions around the country to a single court for coordinated administration and determination of the virtually identical factual and legal issues presented. The Northern District of Georgia is the obvious choice as the proper forum because IHG's U.S. headquarters is in that District, the bulk of the witnesses and sources of proof are located there, and all the License Agreements require application of Georgia law.

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or in any district or division to which all parties have consented." The

10

purpose of Section 1404 is "to prevent the waste of time, energy and money and to protect the litigants, witnesses and public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). For the reasons set forth below, this Court should exercise its discretion under Section 1404(a) to transfer this action to the Northern District of Georgia to avoid "the wastefulness of time, energy and money that §1404(a) was designed to prevent." *Continental Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960).

**A. Licensee could have brought this action in the Northern District of Georgia.**

There is no question that Licensee could have brought this action against IHG in the Northern District of Georgia, so the first requirement for transfer is easily satisfied. IHG's U.S. headquarters is located in the Atlanta, Georgia area (Tidwell Declaration ¶ 4), so these Defendants are subject to the jurisdiction of and venue in the Northern District of Georgia. *See* 28 U.S.C. § 1391(b), (c)(2), and (d).

**B. Consideration of the 1404(a) factors compel transfer to the Northern District of Georgia.**

Analysis of the relevant factors for evaluating a transfer under 1404(a) mandate that transfer is appropriate here. When determining whether transfer is appropriate under 1404(a), district courts should consider: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *United States Surgical Corp. v. Imagyn Med. Techs.*, 25 F. Supp. 2d 40, 46 (D. Conn. 1998) (quoting *Eskofat A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 95 (D. Conn. 1995)). The Court should also consider the following public

factors: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6.

A primary consideration in the purpose and application of 1404(a) is to avoid duplicative litigation, due to both the unnecessary waste of resources for the courts and the parties and the risk of inconsistent judgments. *See, e.g., Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968) (affirming transfer and stating that, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided."); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986) (public interest in conserving scarce judicial resources by "efficient administration of the court system"); *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) (granting 1404(a) transfer motion based on public interest of judicial economy to avoid wasteful and duplicative litigation, and inefficiency of having two district courts preside over similar cases and to avoid potential for different results); *Dollinger v. Salomon Smith Barney Inc.*, No. Civ.A. 00-CV-5607JAP, 2001 WL 1917976 (D.N.J. Mar. 7, 2001) (granting 1404(a) transfer motion of securities action to consolidate with similar action with substantially identical allegations to avoid duplicative litigation of the same issues and potentially inconsistent results).

Here, the same Plaintiffs' counsel filed six separate lawsuits in six different federal districts around the country which make virtually the same allegations against IHG, challenge the same business decisions and programs implemented by IHG, and assert virtually the same causes of action. The strategy or purpose of Plaintiffs' counsel in filing these serial, cookie-cutter lawsuits

in multiple jurisdictions is unclear. What is clear, however, is that this strategy would require six different federal courts to duplicate work and decide essentially the same claims based on the same allegations and the same evidence. In addition to unnecessary duplication of effort and expense, having multiple federal courts decide essentially the same issues presents a real risk of inconsistent decisions, including on pretrial discovery issues, dispositive motions, and even for potential appeal. Indeed, the six current cases span four different federal circuits, so there is a real risk of multiple courts of appeal also having to duplicate work and potentially reaching different results. *See De Falco*, 2013 WL 1122825, at *11 (fact that different circuit courts would have to decide appeals of multiple actions supported transfer in the interest of judicial economy). There is simply no legitimate reason to allow the same plaintiffs' lawyers to take up the time of multiple federal courts and to have multiple bites at the same apple. Section 1404(a) provides an easy and appropriate basis to streamline this litigation, avoid unnecessary duplication of work for the parties and the courts, and resolve this dispute in an overall more efficient manner.

Other relevant factors likewise compel transfer. The License Agreement here, like the agreements in all the other cases, requires application of Georgia law to all non-federal claims, and it is obvious that a Georgia federal court will be more familiar with Georgia law that will govern the case. This factor supports transfer where a federal court based in one state is asked to apply the law of another state. *See, e.g., Carr-Stock v. Orthotic Rehab. Prods. Inc.*, 832 F. Supp. 2d 229, 241 (W.D.N.Y. 2011); *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 269 (D. Conn. 2012); (granting transfer motion and noting that, "[d]istrict courts are presumed to be more familiar with the law of the state in which they sit.").

As for the local interest factor, the issues in this case involve challenges to standards and practices for a national franchise system of hotels and to programs developed and applied

uniformly throughout the system, so no localized interest is implicated here. And because local law will not apply to any of the claims, as Georgia law governs the contract and unconscionability claims and federal law the Sherman Act claim, Connecticut does not have a significant legal interest in the outcome of this dispute. Moreover, the fact that the same plaintiffs' lawyers have filed the same allegations in multiple courts around the country also shows that this is not some "localized" controversy where decision by a particular local court is important.

Other factors also all strongly support transfer to the Northern District of Georgia. The background allegations and legal claims in this case challenge a host of business decisions and programs implemented by IHG in the operation of its Holiday System. IHG's U.S. headquarters is located in the Atlanta, Georgia area, within the Northern District of Georgia, and the majority of IHG's approximately 2000 U.S. employees are based out of the Atlanta headquarters. (Tidwell Declaration ¶ 4.) This includes most of the employees responsible for administering the programs and policies challenged in these lawsuits and for interacting with these Plaintiff Licensees. (*Id.* ¶ 6.) The vast majority of IHG's records also are located at the headquarters office in Atlanta. (*Id.* ¶ 7.) Even in the age of electronically stored information, considerations of physical evidence remain meaningful in the 1404(a) analysis. *See, e.g., In re Volkswagen*, 545 F.3d 304, 316 (5th Cir. 2008) (en banc). Thus, most of the key evidence is located in the Northern District of Georgia. (Tidwell Declaration ¶ 8.)

To the extent compulsory process would be required to secure the attendance of witnesses, those witnesses are more likely to be in the Atlanta area and thus located within the subpoena power of the Northern District of Georgia, so this factor likewise supports transfer. The cost of attendance for willing witnesses strongly supports transfer because trial of this case would require Atlanta-based IHG witnesses to travel nearly 800 miles from their homes to participate in a trial

or other court proceedings. In *In re Volkswagen*, the Fifth Circuit recognized that requiring witnesses to travel even 155 miles to a different district in the same state presented an undue burden due to travel time and expenses as well as personal costs associated with being away from work, family, and community. 545 F.3d at 317. *See also Carson Optical, Inc. v. Telebrands Corp*., No 3:06-cv-821 (CFD), 2007 U.S. Dist. LEXIS 62505, *16-*17, 2007 WL 2460672, *6 (D. Conn. Aug. 24, 2007) (transferring case and noting that transferee court is more convenient for witnesses because of the proximity of defendant's corporate headquarters where relevant witnesses work, reducing expense and travel time).

Further, the obvious wastefulness and inefficiency of litigating multiple actions containing the same substantive allegations and causes of action in different courts, discussed above as a compelling public factor, likewise is a private factor that strongly supports transfer for the convenience of the parties and witnesses. Allowing this and the other similar cases to proceed in separate fora would require IHG to maintain counsel in multiple jurisdictions to defend each case. It would require IHG to respond to provide discovery and produce the same witnesses in multiple courts around the country to address the same issues. This is a needless waste of time and money that should, and can easily be, avoided by granting this motion.

For these reasons, litigating this case and the other similar cases clearly would be easier, more expeditious, and less expensive in the Northern District of Georgia. Therefore, the private interest factors establish good cause to transfer venue.

Against the overwhelming good cause for transfer as shown above, Licensee's choice of forum is entitled to little or no weight. As explained, Licensee is represented by national counsel who have filed virtually identical lawsuits in multiple states around the country. Thus, Licensee's counsel could just as easily litigate this case in the Northern District of Georgia, and Licensee will

suffer no prejudice from having to do so. Because IHG has convincingly shown that the Northern District of Georgia is a far more convenient forum for this and the related cases, IHG has established good cause to override Licensee's choice of forum and this Court should grant the transfer.

## **CONCLUSION**

There is no legitimate basis to allow this case and the other similar actions to proceed separately in multiple federal courts. The mandatory forum selection clause in the License Agreement requires Licensee to bring any litigation against IHG in the Northern District of Georgia, so the *Atlantic Marine* analysis compels transfer to the contractually designated forum. Alternatively, application of the 1404(a) factors overwhelmingly establishes good cause to transfer in the interest of justice to avoid the wasteful and unnecessary duplication of effort and resources for both the courts and the parties that would otherwise result from having multiple federal courts preside over and decide the same issues. The Court therefore should grant the motion and transfer this case to the Northern District of Georgia.

Respectfully submitted,

DEFENDANTS

HOLIDAY HOSPITALITY FRANCHISING, LLC and SIX CONTINENTS HOTELS, INC. d/b/a INTERCONTINENTAL HOTELS GROUP

By: */s/ Bethany Appleby*
Bethany Appleby (ct18418)
Appleby & Corcoran, LLC
470 James Street, Suite 007
New Haven, CT 06513
Phone: 203.497.3068 Ext. 1
bappleby@applebycorcoranlaw.com

16

Ronald T. Coleman Jr. (phv20192)
Jared C. Miller (pro hac vice pending)
Anne Horn Baroody (pro hac vice pending)
Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree St. NE, Suite 3600
Atlanta, GA 30308
Tel. (404) 420-1144
rcoleman@phrd.com

*Their Attorneys*